**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GLOBAL PROFESSIONAL SERVICES, PC
5605 Maple Brook Court
Midlothian, VA 23112

and

PEGGY MCELGUNN
5605 Maple Brook Court
Midlothian, VA 23112

Plaintiffs,

v.

ACTIVE IMPLEMENTATION RESEARCH NETWORK, INC.
8209 Northridge Avenue NE
Albuquerque, NM 87109

Serve: TK REGISTERED AGENT, INC.
102 E KENNEDY BLVD STE 2700
TAMPA, FL 33602

Defendant.

JURY TRIAL DEMANDED

Case Number ___________________

**COMPLAINT**

For their Verified Complaint against Active Implementation Research Network ("AIRN" or "Defendant"), Global Professional Services, PC ("GPS") and Peggy McElgunn ("McElgunn"), collectively "Plaintiffs," allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. GPS is a Virginia corporation with its principal place of business located at 5605 Maple Brook Court, Midlothian, Virginia 23112. GPS is a management firm that supports non-profit organizations, charitable foundations, and accreditation organizations in advancing their

mission by advising on strategic planning, building their audiences, optimizing their presence on the internet, and organizing conferences, among other duties as assigned and agreed to between clients and GPS.

2. McElgunn is an individual domiciled in Virginia. McElgunn is an attorney who has more than 25 years of experience in association management and has worked with more than 50 national and international associations and societies. She has performed various roles including as executive director, government relations director, and communications director, for numerous organizations. McElgunn also is the president and Chief Executive Officer of GPS.

3. AIRN is a Florida not-for-profit corporation with its principal place of business located at 8209 Northridge Avenue NE, Albuquerque, New Mexico 87109.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff GPS is a Virginia corporation with its principal place of business in Virginia, and Plaintiff Peggy McElgunn is a Virginia citizen. Upon information and belief, AIRN is a Florida not-for-profit corporation with its principal place of business in New Mexico. Complete diversity exists between Plaintiffs and AIRN. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. AIRN has transacted business within the District of Columbia such that personal jurisdiction over AIRN is authorized pursuant to D.C. Code § 13-423.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the alleged events or omissions that give rise to the dispute at issue arose in this District.

## BACKGROUND FACTS

7. In or about January 2021, the Administrative Office of the United States Courts issued a Request for Information to determine if a sufficient number of contractors were interested in and qualified to perform a contract to provide a comprehensive implementation plan for post-conviction supervision and pretrial investigations frameworks (the "Procurement"). The Request for Information contemplated a five-year contract.

8. In or about the spring of 2021, Melissa Van Dyke, a Director for AIRN, contacted Ms. McElgunn to gauge Ms. McElgunn's interest in assisting AIRN in preparing a proposal for the anticipated Procurement.

9. AIRN, and particularly Van Dyke, told McElgunn that if McElgunn assisted with preparing the proposal for AIRN and getting the company set up for government contracting work, and AIRN was awarded a contract as a result, AIRN would retain McElgunn either directly or through GPS for the duration of the Administrative Office of the United States Courts contract. This would enable McElgunn to recoup the value she provided to AIRN during the proposal stage. McElgunn is the sole owner of GPS.

10. AIRN told McElgunn that it would compensate her over the course of the Contract by retaining her and/or GPS to perform services on the Contract – and compensating McElgunn and/or GPS for such services – until the Contract terminated.

11. In April 2021, McElgunn, in her personal capacity, began working with AIRN to prepare a proposal based on the information contained in the Request for Information regarding the Administrative Office of the United States Courts' needs.

12. On or about May 5, 2021, the Administrative Office of the United States Courts issued an official solicitation for the Procurement. Proposals in response to the solicitation were due on June 10, 2021.

13. Ms. McElgunn drafted the proposal and worked on related matters, at the request of AIRN, so that AIRN could submit a proposal in response to the solicitation by the due date.

14. At the time McElgunn began working with AIRN on the proposal, AIRN had never performed any work on federal projects. AIRN had performed work only in university settings and was unfamiliar with the federal government contracting process and applicable regulations. AIRN did not have the necessary financial systems in place to perform government contracting work, and did not have the technical expertise necessary to win the work.

15. AIRN was not registered in the System for Award Management ("SAM"), which is required in order for a federal agency to award a federal prime contract to a contractor. McElgunn registered the entity on SAM, obtained a CAGE number for AIRN, and set up AIRN's financial systems so it could perform government contracting work.

16. McElgunn also monitored any updates to the solicitation and coordinated with colleagues that also had federal contracting expertise regarding the solicitation's terms so she could draft a successful proposal for AIRN. McElgunn attended numerous virtual meetings with AIRN representatives during the proposal process.

17. On multiple occasions during this period, McElgunn worked through the entire night into the morning to prepare the proposal and perform related tasks to ensure that AIRN would be well-positioned to be awarded the contract for the Procurement. McElgunn had the technical expertise necessary to draft of winning proposal. AIRN did not have this type of expertise, and would not have been able to draft a winning proposal without McElgunn's efforts. McElgunnn

prepared the technical component of the proposal entirely alone without any collaboration from any of the AIRN principals.

18. During the proposal drafting process, Van Dyke informed McElgunn that she was a valuable member of the team and provided valuable information and advice to AIRN.

19. On June 8, 2021, McElgunn submitted the proposal, on behalf of AIRN, in response to the solicitation.

20. In August 2021, the Administrative Office of the United States Courts informed McElgunn and Van Dyke that it had evaluated proposals and determined that discussions were required and AIRN was allowed to revise its proposal. McElgunn revised the proposal and resubmitted it to the Administrative Office of the United States Courts, again without any collaborative input or oversight from the AIRN principals, as they did not have the necessary technical expertise.

21. On or about September 27, 2021, AIRN was awarded Contract No. USCA21D1084 (the "Contract") as a result of the proposal and revisions to the proposal that McElgunn prepared for AIRN and her efforts in setting up AIRN for federal government contracting work. Van Dyke represented that the Contract represented shared work for AIRN and McElgunn, who were both committing to mutually support the Contract. McElgunn is listed as the point of contact and contractor representative in the Contract.

22. From April 2021 until the Contract was awarded in September 2021, McElgunn invested hundreds of hours on the proposal, revisions to the proposal, and setting up AIRN to be eligible to be awarded, and to perform under, the Contract.

23. AIRN would not have been awarded the Contract but for McElgunn's work on the proposal, registering AIRN in SAM, and setting up its financial systems to be compliant with government contracting regulations.

24. AIRN never compensated McElgunn for her services during the proposal phase.

25. The period of performance for the Contract is five years, running from September 27, 2021 to September 26, 2026. The Contract also includes a six-month option extension, orders under the Contract can be executed until March 27, 2027, and the period of performance for an order issued under the Contract can extend for a year past the Contract's expiration date.

26. The Contract is an indefinite quantity/indefinite delivery ("IDIQ") under which task orders are issued. AIRN is not required to compete for the task orders, and all task orders issued under the Contract are issued to AIRN. The Contract value is up to $21 million.

27. McElgunn was listed as the Contractor Representative in the Contract and was responsible for all contract administration issues.

28. After AIRN was awarded the Contract, AIRN hired McElgunn as an employee in the position of Project Manager for the Contract. McElgunn worked part-time for AIRN and had an annual salary of $125,000, demonstrating the value of McElgunn's expertise.

29. From October 1, 2021 until October 1, 2022, McElgunn performed all services within the scope of her employment, which was in support of the Contract. In addition, she performed services beyond what was required by her employment, such as managing AIRN's website and printing services. McElgunn brought additional value to AIRN by convincing the Administrative Office of the United States Courts to increase the budget for the Contract, and by obtaining the Government's approval to use two foreign citizens on the Contract, which was a time-consuming endeavor. Additionally, McElgunn provided billing support for AIRN under the

initial Time & Materials billing structure, which required detailed and organized recordkeeping and calculations, and maximized the revenue AIRN received from the Government for the Contract. McElgunn was not compensated for these services, as her salary did not cover this work.

30. McElgunn's employment with AIRN ended on or about October 1, 2022, when AIRN and GPS entered into a Services Agreement for GPS to perform administrative and support services to AIRN in support of the Contract. McElgunn no longer performed the work in support of the Contract as an employee of AIRN, but rather as an employee of GPS, which was a subcontractor to AIRN.

31. The term of the Services Agreement was from October 1, 2022 to the last day of the Contract. The ability to terminate the Services Agreement did not negate AIRN's promise that McElgunn would work on the Contract in some capacity – either as an AIRN employee or through GPS – through the end of the Contract period.

32. The Services Agreement listed the services that GPS was to perform. GPS performed services that were outside the scope of the Services Agreement. AIRN never compensated GPS for those services.

33. For instance, when the Administrative Office of the United States Courts needs AIRN to provide services, it issues task orders under the Contract. In order to be awarded the task orders, AIRN must submit proposals for the task orders. GPS prepared all of the task order proposals, even though the Services Agreement did not require GPS to do so.

34. AIRN received additional work under the Contract as a result of the task order proposals that GPS prepared. AIRN did not compensate GPS for its work on the task order proposals.

35. Dean Fixsen and Van Dyke, in their capacity as Directors for AIRN, promised McElgunn on multiple occasions during the period of time that McElgunn and GPS performed services for the benefit of AIRN, that AIRN would retain McElgunn either directly or through GPS for the duration of the Contract, which would enable McElgunn to recoup the value she provided to AIRN during the proposal stage. Fixsen and Van Dyke made this representation repeatedly, including, but not limited to, while McElgunn assisted with proposal preparation and setting up AIRN for government contracting work, and while McElgunn and GPS performed services in support of the Contract, including services outside McElgunn's employment agreement and Services Agreement.

36. On June 17, 2024, AIRN sent a notice of termination of the Services Agreement to GPS. The Services Agreement ended on September 30, 2024.

37. AIRN did not retain McElgunn or GPS to perform work on the Contract after September 30, 2024, despite AIRN's promise that AIRN would retain McElgunn either directly or through GPS to perform work on the Contract until the Contract's termination. The Contract has not terminated.

38. AIRN never compensated McElgunn for her work during the proposal period.

39. After AIRN hired McElgunn as an employee, AIRN never compensated her for work she performed outside the scope of her employment.

40. AIRN never compensated GPS for the work it performed outside the scope of the Services Agreement.

41. Upon information and belief, AIRN has so far received at least $5 million from the Government for the Contract through McElgunn's involvement and will receive another $15 million from now until the Contract's termination.

**COUNT ONE**
**Unjust Enrichment/Quantum Meruit**
**(McElgunn Against AIRN)**

42. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 41 of this Complaint.

43. McElgunn conferred a benefit on AIRN when she assisted with proposal preparation and related activities, such as drafting and revising the proposal, registering AIRN in SAM, setting up AIRN's financial systems to be compliant with government contracting regulations, monitoring updates to the solicitation, coordinating with colleagues to submit a proposal, and ensuring AIRN was well-positioned to be awarded the Administrative Office of the United States Courts' Contract.

44. AIRN was aware of the services McElgunn was performing, and in fact directed her to perform them.

45. After AIRN hired McElgunn as an employee, McElgunn performed services that were outside the scope of her performance and for which she was not compensated.

46. AIRN reasonably expected to compensate McElgunn for her services, and in fact represented that McElgunn would recoup the value she provided to AIRN by AIRN retaining McElgunn either directly or through GPS to perform services on the Contract and compensating McElgunn and/or GPS for the services, through Contract termination.

47. AIRN accepted and retained the benefits of McElgunn's services by accepting and retaining her hundreds of hours of effort in preparing and revising the proposal and setting up the company for federal government contracting work. AIRN also accepted and retained the results of McElgunn's work, including but not limited to the revenue from the Contract that was awarded as a result of McElgunn's services,

48. After AIRN hired McElgunn, AIRN accepted and retained the benefits of McElgunn's services that were outside the scope of her employment, including but not limited to, the revenue from the increased budget for the Contract that McElgunn obtained.

49. AIRN has been unjustly enriched by accepting the benefits of McElgunn's services without compensating McElgunn.

50. Accepting and retaining the benefit of those services under these circumstances without paying for their value is inequitable.

51. As a direct and proximate result of AIRN's conduct, McElgunn has been harmed by not receiving the opportunity to work on the Contract – either personally or through GPS – for the full term of the Contract. McElgunn is entitled to recover her damages in an amount to be proven at trial, but believed to be in excess of $75,000, exclusive of interest and costs, plus interest and the costs of this action.

**COUNT TWO**
**Unjust Enrichment/Quantum Meruit**
**(GPS Against AIRN)**

52. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 51 of this Complaint.

53. GPS entered into a Services Agreement with AIRN for GPS to perform administrative and support services to AIRN in support of the Contract.

54. The Services Agreement listed the services that GPS was to perform.

55. GPS performed services that were outside the scope of the Services Agreement, such as drafting task order proposals that enabled AIRN to obtain additional work under the Contract, as well as matching services provided to billing structures that ensured maximum compensation for AIRN from the government.

56. GPS has not been compensated for those services.

57. GPS conferred a benefit on AIRN by preparing the task order proposals, without which AIRN would not have received additional work under the Contract.

58. AIRN was aware that GPS prepared the task order proposals, and time and materials billing support, and that such services were not included in the Services Agreement.

59. AIRN should reasonably have expected to pay for the services, as the services were not included in the Services Agreement.

60. AIRN did not pay GPS for its work on the task order proposals or time and materials billing support.

61. AIRN accepted and retained the benefits of GPS's services by accepting and retaining the results of GPS's work, including revenue from the additional task orders issued to AIRN as a result of GPS's services.

62. AIRN has been unjustly enriched by accepting the benefits of GPS's services without compensating GPS.

63. Accepting and retaining the benefit of those services under these circumstances without paying for their value is inequitable.

64. As a direct and proximate result of AIRN's conduct, GPS has been harmed by not receiving compensation for its services. GPS is entitled to recover its damages in an amount to be proven at trial, but believed to be in excess of $75,000, exclusive of interest and costs, plus interest and the costs of this action.

**COUNT THREE**
**Promissory Estoppel**
**(McElgunn against AIRN)**

65. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 64 of this Complaint.

66. AIRN promised McElgunn that if she assisted with preparing the proposal for the Administrative Office of the United States Courts Procurement and related activities and AIRN was awarded the Contract, AIRN would retain McElgunn – either directly or through GPS – to perform services for the duration of the Contract, for which AIRN would compensate McElgunn and/or GPS.

67. AIRN should reasonably have expected the promise to induce McElgunn to assist with the proposal preparation and related activities.

68. When she assisted AIRN with proposal preparation and activities to set up AIRN for government contracting work, McElgunn relied on the promise that AIRN would retain her either directly or through GPS to perform services in support of the Contract for the duration of the Contract, and AIRN would compensate McElgunn either directly or through GPS for such services.

69. McElgunn lost the opportunity to pursue other work of significant financial value because she relied on AIRN's promise.

70. The loss of these opportunities was foreseeable to AIRN.

71. McElgunn reasonably and justifiably relied on AIRN's promise because she had expertise that she knew AIRN lacked and reasonably and justifiably believed AIRN would retain her expertise for the duration of the Contract, whether directly or through GPS.

72. Failing to enforce the promise is unjust because McElgunn relied on the promise when assisted in preparing the proposal and performed related activities; she forewent other opportunities; and she was not compensated at the time for her services because she relied on the promise that she and/or her company, GPS, would work on the Contract for its full duration and thereby be compensated for that work.

73. As a direct and proximate cause of Defendant's material breach, McElgunn has been injured in an amount not less than $2.1 million.

74. In accordance with Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues so triable.

WHEREFORE, McElgunn and GPS pray that judgment be entered in their favor and against AIRN in the amount of no less than $2.1 million, plus post-judgment interest, and that the Court award Plaintiffs such other and further relief as the Court deems just and proper.

Date: September 30, 2026

Respectfully submitted,

*/s/ Ambika J. Biggs*

Ambika J. Biggs (D.C. Bar No. 501225)
Allison P. Klena (*pro hac vice* forthcoming)
Hirschler Fleischer PC
1676 International Drive, Suite 1350
Tysons, VA 22102
(703) 584-8900 – Telephone
(703) 584-8901 – Facsimile
abiggs@hirschlerlaw.com
aklena@hirschlerlaw.com

*Counsel for Plaintiffs Global Professional Services, PC and Peggy McElgunn*